**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRACY GARTMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.  05-cv-3123 |
| | ) | |
| GUY PIERCE, Warden, | ) | Judge Robert M. Dow, Jr. |
| Pontiac Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Back in 2005, Tracy Gartman ("Petitioner") filed a petition for writ of habeas corpus [1], naming as Respondent the warden of the Pontiac Correctional Center ("Respondent")[1] pursuant to 28 U.S.C. § 2254.  The petition, which asserts 38 claims for relief, was transferred to the undersigned judge in 2008.  In January 2009, this Court entered an order [36] in which it rejected Respondent's argument that most of Petitioner's claims were procedurally defaulted.  Since then, the briefs have been amended and supplemented several times, due in part to intervening developments in relevant U.S. Supreme Court precedent.  After careful consideration of the voluminous briefing and intervening case law, the Court is now prepared to issue its lengthy ruling addressing each of Petitioner's myriad claims.  *Cf. Harrington v. Richter*, 131 S. Ct. 770, 780 (2011) (observing that because "the writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law," courts "must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources").  For the reasons stated below, the petition is denied in its entirety.

---

[1] Guy Pierce was substituted as Respondent in 2011, pursuant to Fed. R. Civ. P. 25(d).  [See 56.]

## I.    Background

### A.    Factual History[2]

On August 18, 1992, Frances H., a 13-year-old girl, left her house and stayed out through the night.  At about 3:00 a.m. the next day, she went to J.J. Peppers, a convenience store where Petitioner worked, and asked him for a ride home.[3]  She had known Petitioner for about a year and had seen him 15 to 20 times during that period.  Petitioner agreed to give her a ride after work.  He then gave Frances his car keys so that she could drive his car around and fill it with gas.  When Frances returned an hour later, Petitioner, who was still working, told her to lie down in his car.  Frances did so and subsequently fell asleep.

When Frances woke up, she was in Petitioner's car in a forest preserve.  Petitioner was holding a knife to her throat and threatening to kill her if she did not comply with his wishes.  Petitioner walked Frances into the woods, told her to remove her clothes, and raped her.  Petitioner again threatened to kill Frances and then choked her until she lost consciousness.  When Frances woke up, she was bleeding from the chest and throat.  She eventually flagged down a passing truck and was taken to a hospital.  There, Frances was treated for nine stab wounds near her heart and a slash wound to the neck, which were characterized as life-threatening.  Officer Sue Ann Gott asked Frances about her injuries.  Frances answered that she had been raped and stabbed.  When Gott asked Frances to name her attacker, she answered, "Tracy."  Frances also identified Petitioner in a photo array.

---

[2] On habeas review, state court factual findings are presumed correct, absent clear and convincing evidence to the contrary.  See *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007) (citing 28 U.S.C. § 2254(e)(1)).  The Court therefore adopts the following facts from the Illinois Appellate Court, [18-5 at 2-4], unless otherwise indicated.

[3] At trial, Frances testified that she went to see Petitioner "to get a ride home."  Previously, however, Frances told the police that she asked Petitioner "to take her home with him."  [18-11 at 5.]

Petitioner was arrested at his home later that day. The police found a small pocket knife in his front pants pocket. At trial, Frances identified this knife as the one Petitioner used to assault her. A trauma surgeon also testified that Frances's stab wounds were consistent with the size of Petitioner's knife blade. Finally, a forensic scientist testified that fibers and debris found on Petitioner's clothes were consistent with those taken from Frances's sweatshirt.

Petitioner made two statements introduced at trial. In one statement, he said that he finished work on August 19 at about 7:20 a.m. and then went to McDonald's with Frances, where he let her out of the car. [Tr. at B-152.] In the other, Petitioner said that he let Frances out of his car at J.J. Peppers after work and then went to McDonald's alone. [Tr. at C-52.] He admitted knowing Frances but denied having sex with her. He also said he arrived at home about 8:00 a.m. on August 19. Petitioner's neighbor testified that Petitioner returned home around 7:00 a.m. Petitioner's girlfriend said Petitioner returned around 7:30 a.m.

**B.     Procedural History**

**1.     Trial and Direct Appeal**

At trial, Petitioner argued in closing that the physical evidence was inconsistent with Frances's testimony. Specifically, Petitioner argued that although Frances testified that blood was "shooting" from her chest when she regained consciousness, and the truck driver testified that Frances was covered in blood when he found her, there was no blood on any of Petitioner's clothing, on the knife, or in the car. [18-11 at 3.] The State responded in rebuttal that Petitioner was wearing a jacket during the attack, which prevented blood from getting on his clothes and which he used to wipe the blood from the knife; Petitioner allegedly disposed of the jacket after the attack. [18-11 at 3.] On August 20, 1993, an Illinois jury found Petitioner guilty of

aggravated criminal sexual assault and attempted murder.  He was sentenced to an extended term of 45 years' imprisonment for each offense, to be served consecutively.

Petitioner subsequently discovered the jacket in question in the back of his car, which the police released to Petitioner's girlfriend prior to trial.  Petitioner filed a motion for a new trial on the ground that the jacket was newly discovered evidence.  The trial court denied Petitioner's motion, concluding that the jacket was available to both sides prior to trial.  [CL2 at H-9.]

On direct appeal, Petitioner alleged that:

(1) he was denied due process when the State, in rebuttal closing argument, relied on evidence not disclosed at trial (the jacket);

(2) he was denied effective assistance of counsel when trial counsel (a) failed to discover the jacket, (b) failed to impeach Frances with her prior inconsistent statements, (c) failed to object to the admission of improper argument and evidence by the State, and (d) used alibi witnesses whose testimony partially contradicted Petitioner's statements;

(3) he was denied a fair trial by the admission of evidence that, a few weeks before the crime, he asked a deputy sheriff the legal age for consensual sex with a minor;

(4) he was denied a fair trial by the admission of evidence that Frances began crying and shaking when she saw Petitioner's picture in a photo array;

(5) he was denied a fair trial by the admission of prior consistent statements of two State witnesses; and

(6) his sentences were based on findings unsupported by the record and constituted an abuse of discretion.

[18-3, 18-4.]  On March 29, 1996, the Illinois Appellate Court affirmed Petitioner's convictions and sentences.  [18-11.]  Petitioner filed a petition for leave to appeal (PLA) in the Illinois Supreme Court, reasserting claims (1) through (3) above.  [18-13 at 1-2.]  The Supreme Court denied leave to appeal.  *People v. Gartman*, 671 N.E.2d 736 (Ill. 1996).

## 2.    State Post-Conviction Proceedings

While his PLA was pending, Petitioner filed a *pro se* petition in the state trial court, pursuant to 725 ILCS 5/122-1 *et seq.*, alleging similar due process claims based on the State withholding evidence, ineffective assistance of trial counsel claims, and denial of his right to present a defense. [18-17.] Petitioner also alleged that he was denied effective assistance of appellate counsel because counsel did not raise all of his allegations against trial counsel, did not argue that his sentence was cruel and unusual and disproportionate, and did not include any sentencing issues in the PLA. [18-17.] The state trial court dismissed Plaintiff's petition. [18-19 at 10.]

Petitioner appealed the dismissal, alleging that he had asserted meritorious issues and that appointed counsel had failed to comply with the Illinois Supreme Court Rule 651(c) in Petitioner's post-conviction proceedings.[4] [18-19.] The State conceded the latter, so the appellate court reversed and remanded for further proceedings. [18-20.]

While his post-conviction appeal was pending, Petitioner filed several other *pro se* collateral attacks on his conviction in the state trial court, including:

(1) a petition for relief from judgment pursuant to 735 ILCS 5/2-1401, alleging that he was denied due process, a fair trial, and effective assistance of counsel at trial when he was represented, in part, by a law student without disclosure of that fact to him or the court, [18-21];

(2) a state habeas corpus complaint pursuant to 735 ILCS 5/10-101 *et seq.*, alleging that he was denied effective assistance of trial counsel, that the trial court lost jurisdiction when he was represented, in part, by a law student without disclosure

---

[4]    Illinois Supreme Court Rule 651(c) provides that "[t]he record filed in [the appellate court] shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions."

of that fact to him or the court, and that newly discovered evidence established his actual innocence, [18-23]; and

(3) a motion to compel DNA testing, [18-22].

On remand from the post-conviction appeal, Petitioner filed a *pro se* motion to supplement his post-conviction petition. Petitioner's motion alleged that:

(1) he is actually innocent;

(2) counsel failed to call character witnesses at Petitioner's sentencing hearing;

(3) his *Miranda* rights were violated during police questioning;

(4) he was represented at trial, in part, by a law student and was not informed of that fact at the time;

(5) the State knowingly and intentionally lied to the jury to obtain a conviction; and

(6) evidence set forth in the post-conviction filings and DNA evidence show that Petitioner was actually innocent or, in the alternative, that there was reasonable doubt of his guilt.

[18-26.]

The trial court consolidated the various post-conviction petitions and appointed counsel. Petitioner's appointed counsel filed a supplemental post-conviction petition, [18-27], and a superseding amended supplemental post-conviction petition, [18-28], which re-alleged Petitioner's *pro se* allegations that:

(1) Petitioner was denied due process and fundamental fairness when the State withheld photographs showing that petitioner's jacket was in his car when it was impounded;

(2) Petitioner was denied due process and the right to discovery when the State withheld other evidence, including police reports favorable to his defense;

(3) Petitioner was denied due process and fundamental fairness when the State did not request a DNA analysis, which would have demonstrated Petitioner's innocence;

(4) Petitioner was denied due process and fundamental fairness when the State knowingly used false and misleading information, including argument to the jury that Petitioner had destroyed his jacket because it was stained with Frances's blood;

(5) Petitioner was denied effective assistance of counsel when trial counsel failed to: (a) call a potential witness, Brian Gimino, who had seen Frances with another man shortly before the assault, (b) investigate information that Frances had a motive to conceal the identity of her true assailant, (c) make Petitioner's jacket part of the record in his motion for a new trial, (d) advise Petitioner that it was Petitioner's decision whether to testify, (e) omit argument that Frances had self-inflicted her several stab wounds, (f) present any mitigating evidence at sentencing, and (g) prevent Petitioner from being represented by a law student;

(6) Petitioner was denied effective assistance of counsel on direct appeal when counsel failed to allege that trial counsel was ineffective and failed to raise any sentencing issues in the PLA; and

(7) Petitioner was denied his right to present a defense when he was denied the opportunity to present DNA testing, to testify, to call Gimino, and to present evidence that he did not destroy his jacket.

[18-28 at 4-6.] In addition, counsel alleged that:

(1) Petitioner was denied effective assistance of trial counsel when counsel failed to: (a) object to the admission of the prior statement of a State witness, Frances's statements to a police officer, the State's argument regarding future dangerousness, the State's argument that Petitioner had destroyed his jacket, and testimony characterizing Frances's behavior when she identified Petitioner in a photo array, (b) discover the jacket, (c) include the jacket as part of the motion for a new trial, (d) present mitigating evidence at sentencing, (e) inform Petitioner that it was Petitioner's decision whether to testify at trial, (f) impeach Frances with prior inconsistent statements, and (g) adequately prepare defense alibi witnesses;

(2) Petitioner was denied due process and a fair trial by prosecutorial misconduct when the State argued, without supporting evidence, that Petitioner had destroyed his jacket, attacked the credibility of defense counsel, and made several improper comments designed to inflame the jury;

(3) Petitioner was denied due process and the right to a jury trial pursuant to *Apprendi* when the jury did not determine beyond a reasonable doubt those facts that supported extended-term sentences;

(4) Petitioner was denied due process and the right to a jury trial pursuant to *Apprendi* when the jury did not determine beyond a reasonable doubt those facts that supported consecutive sentences;

(5) Petitioner was denied the right to appeal when the appellate court did not fully address his claims that the State's closing argument regarding Petitioner's jacket was not supported by any evidence and that trial counsel was ineffective for not investigating and discovering the jacket; and

(6) Petitioner was denied due process and a fair trial by the cumulative impact of errors committed by trial counsel.

[18-28 at 7-9.] On March 14, 2002, the trial court denied relief, finding that the claims either were forfeited, barred by *res judicata*, or meritless. [18-30.] Notably, the trial court explained its reasoning regarding three of Petitioner's claims and then concluded that, "as to the remaining issues, a sufficient showing of violations of petitioner's constitutional rights has not been made so as to require an evidentiary hearing." [18-30 at 8.]

Petitioner appealed the denial of his consolidated petition, asserting arguments similar to those made in the trial court. [18-31, 18-32.] Petitioner also filed a motion for leave to file a supplemental *pro se* brief, [18-33], but that motion was denied, [18-34]. Petitioner then sought to fire appointed counsel and proceed *pro se*, [18-35], but this request was also denied, [18-36]. Finally, on August 26, 2004, the Illinois Appellate Court affirmed the dismissal of Petitioner's post-conviction petition. [18-5.]

Through counsel, Petitioner filed a PLA in the Illinois Supreme Court, contending only that his sentence for attempted murder violated *Apprendi*. [18-8.] Petitioner again sought to fire appointed counsel, proceed *pro se*, and file a supplemental PLA. [18-10.] After further briefings by both appointed counsel, [18-12], and Petitioner, [18-14], the Supreme Court denied Petitioner's motion to proceed *pro se*, [18-18], and denied the PLA, *People v. Gartman*, 824 N.E. 2d 287 (Ill. 2004).

8

### 3.     Federal Habeas Corpus Proceedings

On May 25, 2005, Petitioner filed a *pro se* petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254, asserting 38 separate claims for relief. [1.] Respondent filed an answer, which relied heavily on the assumption that Petitioner's attempts to supplement his counsel's briefs with his own *pro se* filings did not constitute fair presentment. [18.] The Court concluded that Petitioner's *pro se* filings satisfied the fair presentment requirement and granted Respondent leave to file a supplemental brief. [36.] Respondent complied. [43.]

## II.     Standard of Review

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 limits the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. Section 2254(a) permits a federal court to entertain only those applications alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." If an application includes a claim that has been "adjudicated on the merits in State court proceedings," § 2254(d) provides additional restrictions. Sections 2254(b) and (c) provide that a federal court may not grant habeas relief unless, with certain exceptions, the applicant has exhausted state remedies. See *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

### A.     Claims Previously Adjudicated on the Merits

Habeas relief does not lie for a claim "adjudicated on the merits in State court proceedings" unless the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). Notably, the Supreme Court recently held that "[§] 2254(d) applies even where there has been a summary denial." *Pinholster*, 131 S. Ct. at 1402; see also *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011) ("Where a state court's decision is

9

unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law . . . [or] if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court's decision is an "unreasonable application" of clearly established federal law if the state court identified the correct legal rule but unreasonably applied the controlling law to the facts of the case. *Williams*, 529 U.S. at 407. It should be noted that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. Rather, "unreasonable" means that a state court's decision lies "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

### B.    Procedural Default

The procedural default doctrine generally precludes a federal court from granting habeas relief when (1) the claim was presented to the state courts, and the state court ruling against the petitioner rests on adequate and independent state law grounds, or (2) the claim is unexhausted, and it is clear that the state courts would now hold that the claim is procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Harris v. Reed*, 489 U.S. 255, 263 & n.9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004).

### 1.      Adequate and Independent State Law Grounds

Federal review of a habeas claim is procedurally defaulted "[w]hen the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground." *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005). In other words, the state law grounds for denial of a claim must be independent of the federal question and adequate to support the judgment. See *Franklin v. Gilmore*, 188 F.3d 877, 881 (7th Cir. 1999). This often occurs when the state court denial was based on a petitioner's failure to comply with a state procedural rule, and the state court "relied on that procedural default to refrain from reaching the merits of the federal claim." *Miranda*, 394 F.3d at 991-92; see also *Coleman*, 401 U.S. at 729-30; *Franklin*, 188 F.3d at 882.

### 2.      Unexhausted Claims

Before filing a federal habeas petition, a petitioner must have "fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); see also *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). As the Seventh Circuit explained:

> Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim: although a federal court now has the option of denying the claim on its merits, 28 U.S.C. § 2254(b)(2), it must otherwise dismiss his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim.

*Perruquet v. Briley*, 390 F.3d 505, 513, 514 (7th Cir. 2004).

To fairly present a claim in state court, the petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and must also alert the state court that the claim raised is based on federal law. *Sweeney v. Carter*, 361 F.3d 327, 332 (7th

Cir. 2004); *Chambers v. McNaughtry*, 264 F.3d 732, 738 (7th Cir. 2001). A petitioner must present his claims in one complete round of state court review in the state's ordinary appellate procedure—including to appellate courts when review is discretionary—before proceeding to federal court. See *O'Sullivan*, 526 U.S. at 845, 847; *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004).

### 3.  Overcoming Procedural Default

A petitioner whose federal habeas claim is procedurally defaulted may obtain relief only by demonstrating (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Under the "cause and prejudice" test, "cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Lewis*, 390 F.2d at 1026 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Prejudice is established by showing that the violation of the petitioner's federal rights "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); see also *Lemons v. O'Sullivan*, 54 F.3d 357, 362 (7th Cir. 1995). A federal court may grant relief, even in the absence of cause, in extraordinary cases where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 466 U.S. at 496. Under the "miscarriage of justice" test, the petitioner must show that "no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court." *Lewis*, 390 F.3d at 1026 (citing *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995)).

III.    **Analysis**

The Court considers each of Petitioner's allegations (Claims A through LL) in turn.

A.    **Claim A: The State Courts "Refused to Hear" the Claims in Petitioner's *Pro Se* Submissions.**

In Claim A, Petitioner contends that, on post-conviction review, the state Appellate and Supreme Courts erred in refusing to consider his *pro se* supplemental filings.    [1 at 5.] Respondent argues that the claim is noncognizable and lacks merit.[5]  [43 at 23-37.]

Respondent first argues that the claim is noncognizable because it does not rest upon a violation of a federal right.  The Court agrees.  States are not required by the federal Constitution to provide collateral review of criminal convictions.  *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).  Accordingly, "[u]nless state collateral review violates some independent constitutional right . . ., errors in state collateral review cannot form the basis of federal habeas relief." *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996).  In *Martinez v. Court of Appeal of California*, 528 U.S. 152, 159-64 (2002), the Supreme Court held that a criminal defendant has no constitutional right to proceed *pro se* on direct appeal.  This holding logically extends to state collateral proceedings.  See *In re Barnett*, 73 P.3d 1106, 1112-13 (Cal. 2003); see also *People v. Jackson*, 841 N.E.2d 1098, 1101 (Ill. App. Ct. 2006).  Thus, even assuming the state courts erred in refusing to consider Petitioner's *pro se* pleadings, that error did not implicate any federal right and is therefore noncognizable on federal habeas review.

In the alternative, Respondent argues that the claim lacks merit.  The Court agrees.  As just discussed, petitioners do not have a constitutional right to litigate their state collateral proceedings simultaneously through counsel and *pro se*.  Thus, even assuming that it was error

---

[5] Respondent also argues that the claim is defaulted because Petitioner failed to pursue it in the Illinois Supreme Court.  Because the claim fails on other grounds, the Court need not reach this issue.

for the state courts to consider only issues raised by Petitioner's counsel, the error would not violate federal constitutional law.

### B. Claim B: "All Court Appointed [Attorneys] . . . Systematically Waived, Abandoned, and Misargued" Petitioner's Case.

Petitioner in Claim B asserts that all of his court-appointed attorneys "have denied him all of his federal constitutional rights, lied to and deceived [him] and the Illinois courts, denied [him] access to the courts and engaged in state interference violating the U.S. Constitution." [1 at 5.] Respondent argues that these assertions are insufficient to provide a basis for federal habeas relief under Rule 2(c) of the Rules Governing Habeas Corpus Cases. [43 at 37.]

A federal habeas petition must "specify all the grounds for relief available" and "state the facts supporting each ground." *Mayle v. Felix*, 545 U.S. 644, 649 (2005) (citing Rule 2(c) of the Rules Governing Habeas Corpus Cases). Accordingly, courts reject petitions that fail to state specific factual allegations creating a real possibility of constitutional error. See*, e.g.*, *United States ex rel. Moore v. McCann*, No. 07-2062, 2008 WL 2519923, at *6 (C.D. Ill. June 20, 2008) (refusing to grant relief where petitioner claimed appellate counsel was ineffective but failed to specify the deficient conduct); *United States ex rel. Jones v. Chrans*, 187 F. Supp. 2d 993, 1007 (N.D. Ill. 2002) (refusing to grant a habeas petition when the petitioner claimed that "[t]he court's communications with the only two African-American jurors on his jury caused those jurors to vote to convict"). Here, Petitioner ineffectively pleads the claim because he fails to specify any conduct by his counsel that was deficient or how any such error resulted in the denial of his constitutional rights.

### C. Claim C: Petitioner Was Prejudiced by Trial Counsel's Refusal to Allow Him to Testify.

Petitioner in Claim C asserts that trial counsel denied him his right to testify and failed to inform him that whether to testify was his decision. [1 at 6.] Respondent asserts that, on post-conviction review, the state appellate court adjudicated this claim on the merits. [18-5 at 8-11.] Because the state court properly applied Supreme Court precedent in deciding this issue, Respondent argues that habeas relief is barred under 28 U.S.C. § 2254(d). [43 at 38-49.]

The Illinois Appellate Court reviewed Petitioner's claim under the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).[6] *Strickland* provides that counsel is inadequate when (1) counsel's performance did not meet an objective standard of reasonableness, and (2) without counsel's errors or omissions, there is a reasonable probability that the result of the trial would have been different. *Id.* at 688, 694. "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not met that standard." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009).

In its discussion of Petitioner's claim, the Illinois Appellate Court correctly noted that *Strickland* mandates a two-prong test and that Petitioner was required to satisfy both prongs. [18-5 at 9.] The court did erroneously state at one point that Petitioner failed to prove "that the result of his trial *would have been* different." [18-5 at 10 (emphasis added).] However, the court also stated the correct standard multiple times and employed its methodology. Moreover, the court's substantive analysis was reasonable. The court found that Petitioner would have testified that he did not commit the crimes and that, after he finished working on August 19, he went to

---

[6] To the extent Petitioner argues that the state Appellate Court erred by applying *Strickland* to a right-to-testify claim, the lack of a definitive statement from the U.S. Supreme Court on this issue precludes relief under § 2254(d). See *Thompson v. Battaglia*, 458 F.3d 614, 619 (7th Cir. 2006) (noting the "variety in practice" among the courts for resolving a right-to-testify claim).

McDonald's and then home. [18-5 at 10.] As the court correctly noted, however, this information was already revealed to the jury through the admission of Petitioner's prior statements. [18-5 at 11.]

The court's conclusion was also reasonable in light of the substantial evidence supporting Petitioner's conviction. The evidence at trial demonstrated, among other things, that Frances knew Petitioner previously and therefore could easily identify him; that Frances told a police officer immediately after the crime that "Tracy" assaulted her; that Frances later identified Petitioner as well as his knife; that particles from Frances's sweatshirt were found on Petitioner's clothing; and that Frances's wounds were consistent with the blade of Petitioner's knife. Accordingly, it was not unreasonable for the state appellate court to conclude that Petitioner failed to satisfy *Strickland*.

> **D.** **Claim D: The State Courts Made Decisions "off of Faulty Information."**

Petitioner in Claim D asserts that "the state court's fact finding was in error, it made its decisions off of faulty information, it did not thoroughly review the record, [and] misapplied the laws." [1 at 6.] Petitioner further claims that the state courts erred by basing their rulings "on what the state and the court appointed [attorneys] said and not [on] what was contained in the record." [1 at 6.] Respondent argues that the claim fails under Rule 2(c) of the Rules Governing Habeas Corpus Cases and is procedurally defaulted. [43 at 49-50.]

Respondent first argues that the claim fails under Rule 2(c). The Court agrees. As previously discussed, notice pleading is insufficient in habeas corpus cases. Here, Petitioner ineffectively and insufficiently pleads the claim because he fails to specify any erroneous factual finding or unreasonable legal decision. Instead, Petitioner merely broadly condemns the state courts' actions.

16

In the alternative, Respondent argues that the claim is procedurally defaulted. The Court agrees. The claim was never presented to a state court. Moreover, Petitioner cannot establish cause and prejudice or actual innocence so as to excuse his failure to exhaust the claim. Petitioner has failed to satisfy the cause and prejudice standard because he has not demonstrated an objective factor external to his defense that impeded his efforts to pursue the claim in state court. See *Murray*, 477 U.S. at 488. His vague assertions of "state interference" are insufficient.

Petitioner makes a more concerted effort to satisfy the actual innocence standard, highlighting five pieces of evidence not presented at trial: (1) his jacket, which the State argued in closing that Petitioner had destroyed because it had Frances's blood on it, and which Petitioner alleges was neither bloody nor destroyed; (2) Brian Gimino's proposed testimony that he saw Frances with another man at 7:30 a.m. on August 19; (3) a police report allegedly showing that Petitioner's knife could not have been used in the crime; (4) Petitioner's own proposed testimony, which trial counsel allegedly did not allow him to present; and (5) Petitioner's allegation that trial counsel did not impeach a portion of Frances's testimony with a prior inconsistent statement. [1 at 6A-6Y.] These pieces of evidence, however, are insufficient to meet the substantial burden of proving actual innocence. They do not, for example, constitute "documentary, biological (DNA) or other powerful evidence." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005). And, as previously discussed, the evidence at trial of Petitioner's guilt was compelling.

Moreover, a reasonable juror could reconcile Petitioner's evidence with the verdict. First, Frances's treating physician testified at trial that there likely would have been very little blood loss at the crime scene because none of Frances's arteries were cut. Thus, a juror could reasonably determine that the lack of blood on Petitioner's jacket was not inconsistent with the

evidence mounted against him. Second, a jury likely would not have given Gimino's testimony significant weight given its inconsistencies with Petitioner's own statements that he was with Frances around 7:30 a.m. on August 19. See *Schlup*, 513 U.S. at 330 (holding that "the habeas court may have to make some credibility assessments" when evaluating claims of actual innocence). Third, the police report to which Petitioner refers simply states that no blood was found on Petitioner's knife—evidence that was already presented to the jury through other testimony. Fourth, as previously discussed, the substance of Petitioner's own proposed testimony was already before the jury. And finally, the jury likely would have viewed as insignificant the discrepancy between Frances's pretrial statement (that she went to J.J. Peppers to ask Petitioner *to take her home with him*) and her trial testimony (that she asked him *to give her a ride home*).

### E. Claims E and Q: Petitioner's Right to Present a Defense Was Violated.

Petitioner in Claim E asserts that he was "denied his 5th, 6th, and 14th Amend. rights" to present a defense and to present an exculpatory witness, Brian Gimino. [1 at 6A.] Petitioner in Claim Q asserts that he was denied an opportunity to: (1) present exculpatory DNA evidence, (2) testify, (3) call Gimino, (4) show evidence that his jacket was not covered in blood and that his knife was not used in the crime. [1 at 6K.] Respondent asserts that neither claim has merit. [43 at 50-52.] Respondent also argues that, during post-conviction proceedings, the state trial court adjudicated these claims on the merits, so the adjudication is entitled to deference under 28 U.S.C. § 2254(d). [62.]

The Court agrees that these claims were adjudicated on the merits during post-conviction proceedings. In denying post-conviction relief, the Illinois trial court discussed three of Petitioner's claims and then concluded that, "as to the remaining issues, a sufficient showing of

violations of petitioner's constitutional rights has not been made so as to require an evidentiary hearing." [18-30 at 8.] Under the Supreme Court's recent decision in *Pinholster*, the court's unexplained denial of the "remaining issues" raised in Petitioner's materials adjudicated the merits of those claims, entitling them to deference under § 2254(d). See 131 S. Ct. at 1402 (applying § 2254(d) to Pinholster's claim where the state supreme court had summarily denied the claim "on the substantive ground that it is without merit"). Petitioner raised Claims E and Q in the trial court. [18-28 at 6.] Accordingly, Petitioner can satisfy the unreasonable-application prong of § 2254(d) only by showing no reasonable basis for the state trial court's decision. *Pinholster*, 131 S. Ct. at 1402. Petitioner has not made this showing.

The Constitution "guarantees criminal defendants a meaningful right to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks omitted). That right, however, is abridged by the rules of evidence to some extent. See *Holmes v. South Carolina*, 547 U.S. 319, 324-25 (2005). Here, Petitioner has not shown that any Illinois evidentiary rule "excluded important defense evidence," *id.* at 325, because the record contains no indication that Petitioner attempted to present the pieces of evidence discussed above. Thus, there was a reasonable basis for the state trial court's decision.

      **F.**     **Claim F: The State Court Erroneously Determined that the "Jacket" Issue Was Barred by *Res Judicata* and Waiver.**

In Claim F, Petitioner alleges that, on post-conviction review, the state trial court violated his constitutional rights when it determined that the "jacket" issue was barred by *res judicata* and waiver. [1 at 6A-6B.] Respondent argues that Petitioner's claim is noncognizable. [43 at 52-53.] The Court agrees. Petitioner's argument is merely a claim that the state court misapplied the Illinois doctrines of waiver and *res judicata*. As previously discussed, an error of state law is not cognizable on federal habeas review. See *Smith v. Winters*, 337 F.3d 935, 937 (7th Cir.

2003) ("The application, however unreasonable it may seem, of a state-law doctrine . . . is an error merely of state law, and a federal judge in a habeas corpus proceeding has no authority to correct such errors.").

**G.      Claims G and L: Petitioner Was Subject to a "Trial by Ambush."**

In Claims G and L, Petitioner argues that the State engaged in a "trial by ambush" by deliberately concealing until their rebuttal closing argument a surveillance videotape depicting Petitioner leaving J.J. Pepper's on August 19 with his jacket on. [1 at 6B-6C, 6G.] Respondent argues that these claims lack merit. [43 at 53-58.]

In Claim G, Petitioner specifically alleges that the State called Rich Williams, who saw Petitioner leave J.J. Pepper's on August 19, solely to allow for admission of the surveillance video. Respondent argues that this claim is contradicted by the record. The Court agrees. There were other relevant purposes for Williams's testimony (for example, to show Petitioner's whereabouts at the time in question), and the video would have been admissible without Williams's testimony (again, to establish Petitioner's whereabouts on August 19).

In Claim L, Petitioner presents a similar "trial by ambush" claim to the one he asserted on direct appeal. [18-3 at 5.] The state appellate court rejected the claim, [18-11 at 3-4], so the adjudication is entitled to deference under 28 U.S.C. § 2254(d). The state court's decision was not unreasonable. First, the decision is consistent with federal law allowing the State to "argue reasonable inferences from the evidence that the jury heard." *United States v. Graham*, 315 F.3d 777, 782 (7th Cir. 2003). Second, the record supports the court's conclusion that the State permissibly responded to the defense's argument (that the physical evidence was inconsistent with Frances's testimony) by asking the jury to draw an inference about the jacket.

In the alternative, Respondent argues that that the State's closing argument did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993); see also *Lieberman v. Washington*, 128 F.3d 1085, 1098 n.13 (7th Cir. 1997) (finding that claims of prosecutorial misconduct can be reviewed for harmless error). The Court agrees. As previously discussed, the evidence of guilt was substantial, so the State's argument did not have a substantial effect on the jury's decision to convict Petitioner.

### H. Claims H, I, and J: Petitioner Was Denied a Fair Trial by the State's Closing Arguments.

In Claims H, I, and J, Petitioner asserts that he was denied a fair trial as a result of remarks made by the State during closing and rebuttal argument. [1 at 6D-6F.] Respondent asserts that Claims H and J are procedurally defaulted and that all three claims lack merit. Respondent further argues that any error was harmless. [43 at 58-80.]

#### 1. Procedural Default

In Claim H, Petitioner objects to six statements that the prosecutor made during closing argument.[7] Respondent argues that Statements 1-3 cannot support habeas relief because the state appellate court rejected them on adequate and independent state law grounds. The Court agrees. On post-conviction review, the Illinois Appellate Court held that Petitioner "waived" his

---

[7] The statements are:

(1) the jury should "take away" Petitioner's "presumption of innocence";
(2) acquittal would give Petitioner a "license" to commit future crimes;
(3) the jury should "send a message" to Frances by convicting Petitioner;
(4) the jury should convict Petitioner "to let Frances know that she can trust you";
(5) "don't give him a chance to do this again to some other little girl"; and
(6) the jury should try to "see a thirteen year old kid crawling in the woods. First, see her when she sits up and she looks at—she crawls on all fours bloody and dirty to the roadway naked. I mean I ask you to see that little kid. See her, and she gets picked up by [the truck driver] and she says to [him], her words, am I going to die? Am I going to die? My heart, it hurts. See that ladies and gentleman." [1 at 6D.]

prosecutorial misconduct claim to the extent that it relied on Statements 1-3.  [18-5 at 14-15, 17 n.3, 19.]  This determination was "independent" because it did not depend on the merits of any federal question and "adequate" because the Illinois waiver rule is long established, see 725 ILCS 5/122-3, and regularly applied, see, *e.g., People v. Torres*, 888 N.E.2d 91, 102 (Ill. 2008).

Respondent asserts that Statements 4-6 cannot support habeas relief because Petitioner failed to object to them in the Illinois Supreme Court.  In his *pro se* supplemental PLA, Petitioner asked the Supreme Court to review the statements that the Appellate Court held were waived.  [44-C.]  He also objected to the remaining statements in the materials *attached to* his PLA.  He did not, however, specifically mention Statements 4-6 within the four corners of the PLA, as required for fair presentment.  See *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006).

In Claim J, Petitioner contends that the State "vouched for the credibility" of Frances's testimony and "told the jury that the sperm found in the victim was in fact the petitioner's."  [1 at 6E.]  Respondent argues that the claim is procedurally defaulted.  The Court agrees.  Petitioner failed to raise it on direct appeal or in the state trial court on post-conviction review.

## 2.    Merits

In the alternative, Respondent argues that Claims H, I, and J are meritless.  For prosecutorial misconduct claims, the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986), directs the reviewing court to consider whether a State's comments were improper and, if so, whether they caused prejudice.  *Ruvalcaba v. Chandler*, 416 F.3d 555, 565 (7th Cir. 2005).[8]

---

[8] To evaluate the prejudice prong, a court must consider six factors: (1) whether the State misstated the evidence, (2) whether the remarks implicated specific rights of the accused, (3) whether the defense

### a. Claims Previously Adjudicated on the Merits

Regarding Claim H (Statements 4 and 5) and Claim I,[9] Respondent contends that the Illinois appellate court conducted an analysis in line with *Darden*'s directive, barring relief under 28 U.S.C. § 2254(d). [18-5 at 17-20.] The Illinois Appellate Court did not decide whether the State's remarks were improper but did consider their potential prejudice to Petitioner. In doing so, the Appellate Court conducted an analysis consistent with *Darden* by considering, among other things, the trial court's instructions and the evidence against Petitioner as a whole.

Moreover, the Appellate Court's conclusion was not unreasonable. The trial court (1) sustained defense counsel's objection to two of the State's remarks, (2) instructed the jury not to consider one of those remarks, and (3) repeatedly admonished the jury that closing arguments are not evidence. Finally, as previously discussed, substantial evidence supported the jury's verdict. Accordingly, it was not unreasonable for the Appellate Court to reject Petitioner's claims.

Respondent also argues that Claim H (Statement 6) was adjudicated on the merits. The Court agrees. Petitioner raised this claim in the state trial court, **[18-28 at 8, 44-D at 74-77]**, and that court summarily denied the claim on the merits, [18-30 at 8]. Accordingly, Petitioner can satisfy the unreasonable-application prong of § 2254(d) only by showing no reasonable basis for the state trial court's decision. *Pinholster*, 131 S. Ct. at 1402. Petitioner has not made such a showing. The statement was made in response to defense counsel's suggestion that Frances's wounds could have been self-inflicted. The State's argument, which included citations to

---

invited the remarks, (4) the trial judge's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut the remarks. *Darden*, 477 U.S. at 181-82.

[9] Petitioner in Claim I asserts that the State "attacked and disparaged defense counsel in front of the jury," and stated, "That's how much credibility [defense] counsel lends to this proceeding." [1 at 6D-6E.]

relevant trial testimony and a request that the jury form its own inference, was therefore at least arguably proper.  Thus, there was a reasonable basis for the state trial court's decision.

### b.  Claims Not Previously Adjudicated on the Merits

Regarding the rest of Claim H and Claim J, Respondent argues that relief is barred under *de novo* review.  *See* 28 U.S.C. § 2243.  The Court agrees.  First, two of the statements—that the "sperm found in Frances was in fact [P]etitioner's sperm" and that acquittal would give Petitioner a "license" to commit future crimes—do not appear in the trial record.  Second, an additional argument—"I submit to you that [Frances] is no liar"—was proper.  The State was merely arguing that there was sufficient evidence in the record to support Frances's testimony.  [Tr. at E-53.]  Use of the phrase "I submit" did not transform the statement into improper voucher.  See, *e.g.*, *United States v. Hansen*, 434 F.3d 92, 102 (1st Cir. 2006).

Third, there was no prejudice.  "[T]he most important of the *Darden* factors is the weight of the evidence against the defendant."  *Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000).  As previously discussed, substantial evidence of guilt was adduced at trial.  Additionally, none of the State's remarks misstated the evidence; the trial court repeatedly admonished the jury that closing arguments are not evidence and specifically instructed the jury on the presumption of innocence; and the State's argument was invited, at least in part, by defense counsel's implication that Frances's wounds were self-inflicted.  Therefore, the *Darden* factors indicate that the State's arguments did not infect Petitioner's trial to the point of violating due process.

### c.      Harmless Error

In the alternative, Respondent argues that any due process violation was harmless error because it did not substantially affect the jury's verdict.  The Court agrees.  As previously

discussed, the evidence of guilt was overwhelming, so the State's closing argument did not substantially influence the outcome.

## I.     Claim K: The State Violated *Brady* by Failing to Disclose Evidence.

In Claim K, Petitioner argues that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose (1) the location of the crime scene, (2) that three articles of Frances's clothing were recovered, and (3) that the interior of Petitioner's car was photographed. [1 at 6F.]  Respondent asserts that the claim lacks merit.  [43 at 80-85.]  Respondent also argues that, during post-conviction proceedings, the state trial court adjudicated this claim on the merits, so the adjudication is entitled to deference under 28 U.S.C. § 2254(d).  [62.]

The Court agrees that these claims were adjudicated on the merits during post-conviction proceedings.  Petitioner raised Claim K in the state trial court, [18-28 at 4], and that court summarily denied the claim on the merits, [18-30 at 8].  Accordingly, Petitioner can satisfy the unreasonable-application prong of § 2254(d) only by showing no reasonable basis for the state trial court's decision.  *Pinholster*, 131 S. Ct. at 1402.  Petitioner has not made this showing.

"Evidence is suppressed for *Brady* purposes only if (1) the prosecution failed to disclose evidence that it or law enforcement was aware of before it was too late for the defendant to make use of the evidence, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence."  *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001).  *Brady* claims are routinely rejected when the State makes the evidence in question available for inspection.  See*, e.g., United States v. Serfling*, 504 F.3d 672, 678-79 (7th Cir. 2007); *United States v. Knight*, 342 F.3d 697, 707 (7th Cir. 2003).

Here, the record supports that the information was not suppressed.  The location of the crime scene was described in Detective Lazaro's report.  [CL at 53-61.]  Frances's clothing was

referred to in Detective Lazaro's report, [CL at 54, 56], and in an additional report prepared by evidence technicians, [CL at 90]. The photos were mentioned in Detective O'Neill's report, [CL at 63], and in an additional report prepared by evidence technicians, [CL at 88-89]. The police reports were subpoenaed by defense counsel well before trial, [CL at 109], tendered to the defense in open court, [CL at 137], and referenced by defense counsel at trial, [Tr. at B-165, D-61]. Thus, there was a reasonable basis for the state trial court's decision.

J.     **Claim M: The State Violated *Napue* by "Knowingly and Intentionally" Lying to the Jury During Rebuttal Argument.**

Petitioner in Claim M argues that the State violated *Napue v. Illinois*, 360 U.S. 264 (1959), by falsely telling the jury in rebuttal that Petitioner's jacket was missing and that Petitioner probably destroyed the jacket because it had blood on it. [1 at 6G-6H.] Respondent asserts arguments similar to those raised against Claims H-J.[10] [43 at 85-103.] Respondent also argues that, during post-conviction proceedings, the state trial court adjudicated this claim on the merits, so the adjudication is entitled to deference under 28 U.S.C. § 2254(d). [62.]

1. **Procedural Default and Forfeiture**

Respondent first asserts that the claim is procedurally defaulted. The Court agrees. Petitioner failed to raise the claim in his direct appeal PLA, presenting only his "trial by ambush" argument. [18-13.] On post-conviction appeal, Petitioner argued that the trial court erred when, in dismissing his petition, it held that the *Napue* claim was barred by *res judicata*. [18-33 at 11-

---

[10] Respondent argues that any violation constituted harmless error. The Seventh Circuit has not decided whether a violation of *Napue* may be reviewed for harmlessness, and other circuits are split. Compare *Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005) (en banc) (*Napue* claim cannot be reviewed for harmless error), with *Douglas v. Workman*, 560 F.3d 1156, 1173 n.12 (10th Cir. 2009), *Carter v. Mitchell*, 443 F.3d 517, 537 (6th Cir. 2006), and *Gilday v. Callahan*, 59 F.3d 257, 268 (1st Cir. 1995) (*Napue* claim reviewed for harmless error). Because Petitioner's claim fails on other grounds, the Court need not decide this issue.

14.]  But he did not reassert the underlying *Napue* claim, as required for fair presentment.  See *Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("[M]ere similarity of claims is insufficient to exhaust."); see also *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (finding that raising an ineffective assistance claim does not preserve the underlying constitutional issue).

Respondent also argues that Petitioner's claim is forfeited.  The Court agrees.  *Evans v. United States*, 408 F.2d 369, 370 (7th Cir. 1969), requires a defendant who believes that the government employed perjured testimony to impeach that testimony at the time of trial.  Here, when the State made its argument about the jacket, Petitioner told defense counsel that it was incorrect, but counsel made a strategic decision not to object.  [18-17 at 4.]  Therefore, Petitioner forfeited his right to assert the argument as a basis of error on appeal.

### 2.  Merits

In the alternative, Respondent argues that the *Napue* claim is meritless.  As a threshold issue, the Court finds that this claim was adjudicated on the merits during post-conviction proceedings.  Petitioner raised Claim M in the trial court, [18-28 at 4-5], and that court summarily denied the claim on the merits, [18-30 at 8].  Accordingly, Petitioner can satisfy the unreasonable-application prong of § 2254(d) only by showing no reasonable basis for the state trial court's decision.  *Pinholster*, 131 S. Ct. at 1402.  Petitioner has not made this showing.

Under *Napue*, a conviction obtained through the knowing use of false testimony violates due process.  360 U.S. at 269.  However, the claim fails "if the false testimony could not in any reasonable likelihood have affected the judgment of the jury."  *Id.* at 271.  As previously discussed, the jury would have rendered a guilty verdict even without hearing the jacket argument.  Nevertheless, Petitioner argues that the jury must have given weight to the State's argument because it requested to view the portion of the video showing Petitioner putting on his

jacket and leaving the store. But there is no indication that the jury did not merely mention the jacket to describe the video, which contained other relevant evidence, such as the time Petitioner left work. Thus, there was a reasonable basis for the state trial court's decision.

### K.    Claim N: The State Violated Petitioner's Due Process Rights by Failing to Obtain a DNA Test.

In Claim N, Respondent argues that the State violated his constitutional rights when it failed to have the DNA samples found on Frances tested for a match to Petitioner. [1 at 6H-6I.] Respondent asserts that the claim is defaulted and lacks merit.[11] [43 at 103-06.] Respondent also argues that, during post-conviction proceedings, the state trial court adjudicated this claim on the merits, so the adjudication is entitled to deference under 28 U.S.C. § 2254(d). [62.]

Respondent first argues that the claim is defaulted. The Court agrees. After raising the claim on post-conviction review in the state trial court, Petitioner failed to raise it again in either the state Appellate Court or the state Supreme Court.

In the alternative, Respondent argues that the claim lacks merit. As a threshold issue, the Court finds that this claim was adjudicated on the merits during post-conviction proceedings. Petitioner raised Claim N in the trial court, [18-28 at 4], and that court summarily denied the claim on the merits, [18-30 at 8]. Accordingly, Petitioner can satisfy the unreasonable-application prong of § 2254(d) only by showing no reasonable basis for the state trial court's decision. *Pinholster*, 131 S. Ct. at 1402. Petitioner has not made this showing.

"*Brady* prohibits suppression of evidence, it does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing

---

[11] Respondent also argues that Claim N is barred by *Teague v. Lane*, 489 U.S. 288, 301 (1989), as granting relief would create a new rule of criminal procedure. Because Petitioner's claim fails on other grounds, the Court need not decide this issue.

counsel." *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002). As discussed more fully in connection with Claim O, the record supports that defense counsel knew that DNA had been collected and could have requested testing prior to trial. Thus, there was a reasonable basis for the state trial court's decision.

### L. Claim O: The Trial Court Erred in Denying Petitioner's Motion for DNA Testing.

In Claim O, Petitioner argues that, on post-conviction review, the trial court erred when it denied "without comment" his motion for a DNA test. [1 at 6I.] Respondent argues that the claim is noncognizable, was not fairly presented, and lacks merit.[12] [43 at 106-112.]

#### 1. Viability and Fair Presentment

Respondent first argues that the claim is noncognizable. The Court agrees. Petitioner essentially asserts that he was entitled to DNA testing under Illinois law. *See* 725 ILCS 5/116-3. As previously discussed, such a claim is noncognizable on federal habeas review because it raises a question of purely state law.

Respondent also argues that the claim was not fairly presented as a federal constitutional argument in state court. The Court agrees. A state court does not have a fair opportunity to consider a federal constitutional claim unless Petitioner: (1) relies on pertinent federal cases employing constitutional analysis, (2) relies on state cases applying constitutional analysis to a similar factual situation, (3) asserts the claim in terms so particular as to call to mind a specific constitutional right, or (4) alleges a factual pattern well within the mainstream of constitutional litigation. *Verdin v. O'Leary*, 972 F.2d 1467, 1473-74 (7th Cir. 1992). In the state Appellate

---

[12] Respondent also argues that the record does not support Petitioner's factual allegation that the state trial court "denied without comment" his request for a DNA test. Respondent maintains that Petitioner's counsel chose not to pursue the request and omitted it from the amended petition. Because Petitioner's claim fails on other grounds, the Court need not decide this issue.

Court, Petitioner neither cited federal constitutional cases nor framed his argument in such a way as to call to mind a constitutional right. Instead, he argued that the trial court abused its discretion by dismissing his motion, which was filed under Illinois law. [18-33 at 22-23.] Petitioner's single reference to the "U.S. Constitution's Due Process and Equal Protection clauses," [18-33 at 24], was insufficient to raise a constitutional argument. *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) ("[T]he words 'due process' are not an argument.").

### 2. Merits

In the alternative, Respondent argues that Petitioner's claim is meritless. First, Respondent argues that Petitioner is not entitled to DNA testing under Illinois law. The Court agrees. An Illinois statute (available to Petitioner when appointed counsel amended and supplemented his post-conviction petition) establishes a right to DNA testing for criminal defendants who assert actual innocence. See 725 ILCS 5/116-3 (West 1999). To obtain testing under the statute, a defendant must show, among other things, that the evidence "was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial." *Id.* At trial, however, a state forensic scientist testified that "[o]ur laboratory system is capable of conducting DNA [tests]." [Tr. at C-90.] Therefore, the forensic technology was available at the time of trial.

Second, Respondent argues that the claim is meritless under constitutional law. [48.] The Court agrees. In *District Attorney's Office v. Osborne*, 129 S. Ct. 2308, 2316, 2319-23 (2009), the Supreme Court held that convicted defendants do not have a federal constitutional right to obtain post-conviction access to the prosecution's biological evidence for use in DNA testing.

30

### M.   Claim P: The State Court Admitted "Irrelevant Evidence" at Trial.

In Claim P, Petitioner asserts that admission of Eric Paniak's testimony violated his constitutional rights because it was irrelevant and prejudicial.  [1 at 6I-6K.]  At trial, Paniak testified that, four to five weeks prior to the crime, Petitioner asked him the legal age for consent; when Paniak told Petitioner that the age was 16, Petitioner responded, "Bullshit."  [Tr. at B-220.] Respondent asserts that the claim is noncognizable, was not fairly presented in state court, and lacks merit.  [43 at 113-18.]

### 1.   Viability and Fair Presentment

Respondent first argues that the claim is noncognizable because it concerns a question of only state law.  The Court agrees.  Although Petitioner labels his claim as a federal constitutional challenge, the substance of the claim is that the trial judge misapplied Illinois evidence law when it admitted Paniak's testimony.  As previously discussed, such a claim is noncognizable on federal habeas review.

Respondent also argues that the claim was not fairly presented as a federal constitutional argument in state court.  The Court agrees.  As previously discussed, a state court does not have a fair opportunity to consider a federal constitutional claim unless Petitioner satisfies one of the *Verdin* factors.  In the state Appellate Court, Petitioner neither cited federal constitutional cases nor framed his argument in such a way as to call to mind a constitutional right.  Instead, he cited Illinois law and argued that Paniak's testimony was irrelevant and prejudicial.  [18-4 at 45-47.]

### 2.   Merits

In the alternative, Respondent argues that Petitioner's claim lacks merit.  The Court agrees.  "To be of constitutional import, an erroneous evidentiary ruling . . . must have produced a significant likelihood that an innocent person has been convicted."  See *Howard v. O'Sullivan*,

31

185 F.3d 721, 723-24 (7th Cir. 1999). Here, Paniak's testimony was properly admitted to show motive to kill (Petitioner believed it was unlawful to have sex with Frances) and state of mind (Petitioner was contemplating having sex with a minor). [Tr. at A-16-23, 18-11 at 6-7**.**] Therefore, admission of the testimony did not result in a constitutional violation.

### N.     Claim R: Petitioner Was Denied His Right to Appeal.

In Claim R, Petitioner alleges that the "Illinois appellate court failed to fully determine the issues raised on direct appeal," specifically, the jacket issues. [1 at 6L.] Respondent argues that this claim is defaulted and meritless. [43 at 119-20.] Respondent also argues that, during post-conviction proceedings, the state trial court adjudicated this claim on the merits, so the adjudication is entitled to deference under 28 U.S.C. § 2254(d). [62.]

First, Respondent argues that the claim is defaulted. The Court agrees. Petitioner failed to raise it in the state Appellate Court and the state Supreme Court through his post-conviction appeal.

Second, Respondent argues that the claim fails on the merits. As a threshold issue, the Court finds that this claim was adjudicated on the merits during post-conviction proceedings. Petitioner raised Claim R in the trial court, [18-28 at 8-9], and that court summarily denied the claim on the merits, [18-30 at 8]. Accordingly, Petitioner can satisfy the unreasonable-application prong of § 2254(d) only by showing no reasonable basis for the state trial court's decision. *Pinholster*, 131 S. Ct. at 1402. Petitioner has not made this showing because the state Appellate Court gave both the "trial by ambush" and the ineffective assistance of counsel claim full review. [18-11 at 3-5.]

### O. Claims S, T, U, and AA: Petitioner Was Denied Access to the Courts.

In Claims S, T, U, and AA, Petitioner argues that his constitutional right of access to the courts was violated during state post-conviction proceedings. Specifically, Petitioner in Claim S argues that the post-conviction trial court erred in denying "without comment" his state habeas complaint, his petition for relief from judgment, and his motion for a DNA test. [1 at 6L-6M.] In Claims T and U, Petitioner argues that his post-conviction appellate counsel refused to raise his actual innocence claims, and that the state Appellate and Supreme Courts refused to consider the claims raised in his *pro se* briefs. [1 at 6M-6O.] And in Claim AA, Petitioner argues that it was unconstitutional for the state trial court to dismiss on *res judicata* grounds some of the claims in the post-conviction petition. [1 at 6S.] Respondent argues that the claims are noncognizable and lack merit.[13] [43 at 121-25.]

### 1. Viability

Respondent argues that Claims T and U are noncognizable. The Court agrees. Although Petitioner styles these claims as involving denial of access to court, his arguments rest on the performance of post-conviction counsel, a ground of relief foreclosed by 28 U.S.C. § 2254(i). To the extent that Petitioner's arguments rest on the state courts' refusal to consider his *pro se* submissions, as previously discussed, such arguments do not allege a constitutional violation.

Respondent also asserts that Claim AA is noncognizable. The Court agrees. Petitioner merely argues an error in the application of *res judicata* by a state court; this cannot form the basis for relief in federal habeas court because it is merely a procedural doctrine and asserts no constitutional violation. Moreover, "[t]he right of access to the courts protects prisoners from

---

[13] Respondent also argues that Claims T and U are defaulted to the extent they depend on events occurring in the state Supreme Court. Because the claims fail on other grounds, the Court need not reach this issue.

being shut out of court . . .; it does not exist to enable the prisoner . . . to litigate effectively once in court." *Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir. 2007) (en banc) (citations omitted). Petitioner's *res judicata* claim thus does not implicate the constitutional right of access to the courts.

Respondent finally argues that Claim S is noncognizable for the same reasons asserted in connection with Claim A. The Court agrees. As previously discussed, even assuming the state courts erred in refusing to consider Petitioner's *pro se* pleadings, that error did not implicate any federal right and is therefore noncognizable on federal habeas review.

### 2. Merits

In the alternative, Respondent argues that Petitioner has failed to show that he was denied access to the courts. The Court agrees. As just discussed, the right of access to the courts does not enable a defendant to litigate effectively once in court. This, however, is exactly what Petitioner alleges. There is no indication that Petitioner's right of access to the courts during post-conviction proceedings was not satisfied. *Cf. Finley*, 481 U.S. at 557 (finding the right satisfied where state prisoner had access to trial record and appellate court decision and brief).

### P. Claim V: The Evidence Proves Actual Innocence.

In Claim V, Petitioner argues that his "5th, 6th, and 14th Amend. rights were violated" because "most issues and claims and evidence presented . . . supported his claim of actual innocence." [1 at 6O.] Respondent counters that the claim must fail under Rule 2(c) of the Rules Governing Habeas Corpus Cases because it does not state facts that point to constitutional error. [43 at 125-26.] The Court agrees. As previously discussed, notice pleading is insufficient in habeas corpus cases. Here, Petitioner ineffectively pleads the claim because he fails to specify

any violation of federal law; he merely contends that if the jury had heard certain unspecified evidence, he would have been acquitted.

### Q.      Claims W and Y: Trial Counsel Was Constitutionally Ineffective.

In Claim W, Petitioner argues that trial counsel was ineffective, alleging 19 errors made by counsel at trial.[14]  [1 at 6O-6Q.]  In Claim Y, Petitioner argues that trial counsel's errors, in the aggregate, effectively deprived him of assistance of counsel.  [1 at 6R.]  Respondent argues that six of the alleged errors are insufficiently pleaded, 12 of the alleged errors are procedurally defaulted, and all of the alleged errors lack merit.  [43 at 126-57.]  Respondent also argues that, during post-conviction proceedings, the state trial court adjudicated many of the alleged errors on the merits, so the adjudication is entitled to deference under 28 U.S.C. § 2254(d).  [62.]

### 1.      Rule 2(c) and Procedural Default

Respondent first argues that six of the alleged errors lack the required specificity under Rule 2(c) of the Rules Governing Habeas Corpus Cases.  The Court agrees.  As previously discussed, notice pleading is insufficient in habeas corpus cases.  In Errors 2 and 16, Petitioner complains of counsel's failure to object but does not specify which of the State's statements were

---

[14] The errors are: (1) counsel failed to discover the jacket; (2) counsel failed to object to the State's closing argument; (3) counsel failed to investigate and discover witnesses and evidence from McDonald's; (4) counsel failed to impeach victim with a prior inconsistent statement; (5) counsel used alibi witness whose testimony was inconsistent with Petitioner's; (6) counsel failed to adequately prepare alibi witnesses; (7) counsel failed to call Brian Gimino; (8) counsel failed to investigate thoroughly; (9) counsel stated that additional investigation was not necessary because the State's case was weak; (10) counsel failed to raise the jacket issue in his motion for a new trial; (11) counsel failed to inform Petitioner of his right to testify; (12) counsel told the jury that Frances could have inflicted her knife wounds herself, but no evidence corroborated that theory; (13) counsel failed to present mitigating evidence at sentencing; (14) counsel failed to raise the issue of improper admission of a prior consistent statement in his post-trial motion; (15) counsel failed to object at trial and in his post-trial motion to admission of a prior inconsistent statement; (16) counsel failed to object to the State's remarks that Petitioner would be dangerous in the future; (17) counsel failed to impeach Frances with an inconsistent statement to Detective Lazaro; (18) counsel failed to impeach Frances with an inconsistent statement to Detective Wilson; (19) counsel failed to object to the testimony about Frances's reaction upon seeing a photo array.

objectionable. In Errors 3 and 9, Petitioner argues that counsel failed to investigate but does not state what investigation he believes should have been undertaken or how such an investigation would have affected the trial. In Error 4, Petitioner complains that counsel did not impeach Frances with a prior inconsistent statement but fails to specify the statement. In Error 6, Petitioner complains that counsel failed to prepare alibi witnesses but does not specify the witnesses or how more preparation would have affected the trial.

Respondent also argues that Errors 3, 4, 6, 8-10, 12-16, and 19 are defaulted because Petitioner failed to present them in his direct appeal PLA or to the state appellate court on post-conviction review. The Court agrees. Moreover, Petitioner had no constitutional right to an attorney during the preparation of his direct appeal PLA, *Anderson v. Cowan*, 227 F.3d 893, 901 (7th Cir. 2000), or during post-conviction proceedings, *Szabo v. Walls*, 313 F.3d 392, 397 (7th Cir. 2002), so he cannot show cause to excuse his default. Finally, as previously discussed, Petitioner has not shown that failure to grant habeas relief will result in a fundamental miscarriage of justice.

### 2. Merits

In the alternative, Respondent argues that the claims lack merit.[15] For claims previously adjudicated on the merits, Respondent argues that the state courts did not contradict or unreasonably apply *Strickland* and that there was a reasonable basis for the courts' decisions. See *Harrington*, 131 S. Ct. at 784 ("[T]he habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient."). For

---

[15] Respondent also criticizes Petitioner for failing to specify what his counsel *did* to defend him. Indeed, the Court must evaluate the performance of counsel as a whole, so failing to detail what counsel *did* do is "a big omission." See *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009).

36

claims not previously adjudicated on the merits, Respondent argues that Petitioner has not established entitlement to relief.

### a.      Claims Previously Adjudicated on the Merits

On direct appeal, the Illinois Appellate Court cited *Strickland* and correctly applied its two-prong test. [18-11 at 4-6.] First, the court reasonably concluded that any error by counsel in failing to discover the jacket did not prejudice Petitioner. As the court noted and as previously discussed, the case hinged on Frances's testimony, not the jacket. Second, the court concluded that counsel was not deficient for failing to object to the State's closing rebuttal argument regarding the jacket. This determination is not unreasonable because, as the court noted and as previously discussed, the State's argument called for an inference from the facts in evidence and rebutted defense counsel's closing argument.

Third, the Appellate Court rejected on prejudice grounds Petitioner's argument that counsel performed inadequately by not impeaching Frances with, among other things, her inconsistent statement regarding why she went to visit Petitioner on August 19. As the court noted, counsel impeached Frances in other areas of her testimony, so any impact on the outcome likely would have been minimal. And, as previously discussed, the alleged inconsistency in Frances's statements was arguably insignificant. Finally, the court determined that counsel performed competently in calling an alibi witness whose testimony partially contradicted Petitioner's statements that he arrived home around 8:00 a.m. on August 19. This determination was not unreasonable because, as the court noted, the witness saw Petitioner with no blood on his clothes and thus was important for the defense.

On post-conviction review, as previously discussed, the state Appellate Court cited *Strickland* and correctly articulated its two-prong test. [18-5 at 11-14.] The court then engaged

in a lengthy discussion of Petitioner's claim that trial counsel was ineffective for failing to call Brian Gimino as a witness.[16] Ultimately, the court presumed that counsel made a strategic decision not to call Gimino. This determination was not unreasonable because, as the court noted, the record showed that counsel consulted with Gimino and knew the content of Gimino's proposed testimony. Moreover, the record suggests several factors that could have supported counsel's decision. See *Johnson v. Loftus*, 518 F.3d 453, 457 (7th Cir. 2008) (conducting a similar analysis). For example, as previously explained, Gimino's proposed testimony that he saw Frances at 7:30 a.m. on August 19 with someone other than Petitioner was inconsistent with Petitioner's own statements that he was with Frances around the same time.

Also on post-conviction review, Petitioner raised Errors 3, 7, 8-10, 12-16, and 19 in the trial court, [18-17 at 4, 18-28 at 4-8], and that court summarily denied the claims on the merits, [18-30 at 8]. Accordingly, Petitioner can satisfy the unreasonable-application prong of § 2254(d) only by showing no reasonable basis for the state trial court's decision. *Pinholster*, 131 S. Ct. at 1402. Petitioner has not made this showing, as illustrated by two examples.

First, Petitioner argues in Errors 14 and 19 that counsel was deficient for failing to renew an objection to the admission of Rich Williams's prior out-of-court statement that "Tracy was out of here in a hurry [on August 19]," [Tr. at B-200-01], and ASA McCarter's description of Frances's physical reaction to the photo array. Williams was available for cross-examination at trial, so a hearsay objection likely would have failed under Illinois law. See *People v. Carpenter*, 190 N.E.2d 738, 741 (Ill. 1963) (stating that the "essential feature" of the hearsay rule is opportunity for cross-examination of the declarant). And McCarter's description may have helped establish the reliability of Frances's prior identification of Petitioner. See *People v.*

---

[16] In its decision, the state Appellate Court also examined Error 11, which the Court discussed previously in connection with Claim C.

*Jones*, 687 N.E.2d 1128, 1132 (Ill. App. Ct. 1997) (stating that "the witness's level of certainty as demonstrated at the time of the lineup" is one factor to be considered in assessing the reliability of a prior identification).

Second, Petitioner argues in Error 13 that trial counsel erred by failing to present any mitigating evidence at the sentencing hearing. Such evidence, however, likely would not have changed the outcome. The trial court imposed consecutive 45-year sentences. Consecutive sentences were mandatory. See 730 ILCS 5/5-8-4(a) (West 1992). The trial court's comments, which emphasized a number of aggravating factors (such as the age of the victim and the brutality of the attack), provide ample support for its decision. [Tr. at H-59-60.]

### b.     Claims Not Previously Adjudicated on the Merits

Respondent argues that Petitioner has not met his burden of proof regarding claims not previously adjudicated on the merits (namely, Errors 4 and 6). Even under § 2243, "a prisoner still must establish an entitlement to the relief he seeks." *Harrison v. McBride*, 428 F.3d 652, 665 (7th Cir. 2005). As previously discussed, Errors 4 and 6 are insufficiently pleaded and, in any event, Petitioner fails to show that the errors could have affected the outcome at trial.

Moreover, in evaluating "the entire course of the defense," *Williams*, 557 F.3d at 538, the Court finds counsel's performance effective. Pretrial, counsel moved to preclude the State from admitting damaging testimony, subpoenaed all police reports and video recordings, and entered notice of an alibi defense. At trial, counsel impeached parts of Frances's testimony during cross-examination and drew jurors' attention to the inconsistencies in her statements; counsel called five witnesses in his case-in-chief. After the verdict, counsel filed a post-trial motion. During sentencing, he argued for changes in the pre-sentence report and cited mitigation factors. For all these reasons, Petitioner was not deprived of his constitutional right to counsel.

39

R.      **Claim X: Petitioner's Right to Counsel Was Violated When a Law Student Participated in His Defense Without His Consent.**

Petitioner in Claim X argues that his right to counsel was violated because he did not "knowingly or intelligently" consent to have a law student participate in his defense.  [1 at 6R.] Respondent argues that this part of the claim is defaulted, without merit, and *Teague* barred.  [43 at 157-62.]  Petitioner further argues that counsel and the law student violated Illinois Supreme Court Rule 711 when they failed to inform the court that a law student was participating in the defense.  [1 at 6R.]  Respondent argues that this part of the claim is noncognizable.[17]  [43 at 162.]

1.  **Consent**

Petitioner first argues that he did not "knowingly or intelligently" sign a written consent to a law student's participation in his defense.  Respondent asserts that this claim is procedurally defaulted because Petitioner did not raise it on post-conviction review in the trial court.  The Court agrees.  In his post-conviction petitions, Petitioner maintained that he *never* consented to the law student's participation, not that the consent he gave was not knowing and voluntary.  [18-26 at 2, 18-28 at 6.]

In the alternative, Respondent contends that the argument fails on the merits.  The Court agrees.  Petitioner essentially alleges that, by consenting to the law student's participation, he waived his Sixth Amendment right to counsel, and any waiver of a constitutional right must be knowing and intelligent.  But Petitioner also was represented by a licensed attorney throughout

---

[17] Respondent also argues that, during post-conviction proceedings, the state trial court adjudicated this argument on the merits, so the adjudication is entitled to deference under 28 U.S.C. § 2254(d).  [62.]  The Court agrees that this part of the claim was adjudicated on the merits during post-conviction proceedings. [18-28 at 6.]  However, because Respondent fails to develop a merits-based argument regarding this part of the claim in its brief, the Court declines to hold that Petitioner has failed to show no reasonable basis for the trial court's decision.  As discussed below, this part of the claim fails on other grounds.

his trial, so he did not waive any constitutional right.  *Cf. Schneckloth v. Bustamonte*, 412 U.S. 218, 237 (1973) ("Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial.").  The California Supreme Court rejected an identical argument on these grounds in *People v. Perez*, 594 P.2d 1, 8 (Cal. 1979).  Similarly, in *In re Denzel W.*, 930 N.E.2d 974, 982 (Ill. 2010), the Illinois Supreme Court recently held that "[w]here the supervising attorney properly supervises the [] law student and remains responsible for the representation . . . the defendant has not been denied counsel," even if the defendant did not give his consent.

Respondent also argues that this part of the claim is barred by *Teague v. Lane*, 489 U.S. 288, 301 (1989), which holds that a federal habeas court may not devise and apply a new rule of criminal procedure.  The Court agrees.  The rule that Petitioner proposes is that the Constitution requires a defendant to knowingly and voluntarily consent to a law student's participation in his defense when he has *not* waived his right to counsel.  The rule is "procedural" because it "govern[s] the conduct of police, prosecutors, or courts preceding the verdict and sentence," *Rodriguez v. Chandler*, 382 F.3d 670, 673 (7th Cir. 2004), and "new" because "a contrary result would not have been an illogical . . . application of prior precedent," *Holland v. McGinnis*, 963 F.2d 1044, 1053 (7th Cir. 1992) (internal quotations omitted), namely, *Denzel W.*  Neither of *Teague*'s exceptions apply because the proposed rule is not substantive or a "watershed" rule of procedure.  See *Lambert v. McBride*, 365 F.3d 557, 562 (7th Cir. 2004).

### 2.  Supreme Court Rule 711

Petitioner also argues that counsel and the law student violated Illinois Supreme Court Rule 711 when they failed to inform the court that a law student was participating in the defense.

41

Respondent maintains that this part of the claim is noncognizable.  The Court agrees.  Petitioner asserts a violation of Illinois court rules.  As previously discussed, such a claim is noncognizable on federal habeas review because it raises a question of purely state law.

### S.     Claim Z: Direct Appeal Counsel Was Constitutionally Ineffective.

In Claim Z, Petitioner argues that his direct appeal counsel was ineffective because she failed to raise: (1) all issues contained in his post-conviction petition, (2) all issues contained in his "state habeas corpus, [petition for] relief from judgment and all supplementals filed," (3) a claim that his sentence was disproportionate and cruel and unusual, and (4) claims based on "sentencing issues" in his PLA.  [1 at 6R-6S.]  Respondent argues that these claims are procedurally defaulted and meritless.  [43 at 163-76.]  Respondent also argues that, during post-conviction proceedings, the state trial court adjudicated Arguments 1, 3, and 4 on the merits, so the adjudication is entitled to deference under 28 U.S.C. § 2254(d).  [62.]

### 1.     Procedural Default

Respondent first argues that Petitioner failed to present the state Appellate Court with any claim that his direct appeal counsel was ineffective.[18]  The Court agrees.  On post-conviction appeal, Petitioner made passing reference to the fact that he had argued *in the collateral petitions filed in the trial court* that direct appeal counsel was ineffective.  [18-33 at 9, 16.]  This assertion did not constitute fair presentment.  First, Petitioner did not state operative facts in support of his argument.  Second (and relatedly), the court could only have discovered a factual basis for the claim by going outside the four corners of the *pro se* supplemental brief to the collateral petitions themselves.  Third, Petitioner failed to make it clear that he was seeking relief due to direct

---

[18] Respondent further argues that Petitioner's claim is defaulted because he failed to allege in his supplemental PLA any facts that would entitle him to relief.  Because the claim fails on other grounds, the Court need not address this issue.

appeal counsel's failure. Instead, he cited that failure as a reason for the state court to allow him to file a *pro se* brief and to overrule the trial court's *res judicata* determination. [18-33 at 11, 16.] As previously discussed, such errors preclude fair presentment.

### 2.    Merits

In the alternative, Respondent argues that the claim lacks merit. As a threshold issue, the Court finds that Arguments 1, 3, and 4 were adjudicated on the merits during post-conviction proceedings. Petitioner raised those arguments in the trial court, [18-17 at 6, 18-28 at 6], and that court summarily denied those arguments on the merits, [18-30 at 8]. Accordingly, with respect to those arguments, Petitioner can satisfy the unreasonable-application prong of § 2254(d) only by showing no reasonable basis for the state trial court's decision. *Pinholster*, 131 S. Ct. at 1402.

*Stallings v. United States*, 536 F.3d 624, 627 (7th Cir. 2008), provides guidance for reviewing *Strickland* claims alleging that appellate counsel was ineffective because counsel overlooked a meritorious argument:

> [Courts] first examine the record to see whether the appellate attorney in fact omitted "significant and obvious" issues. If so, [courts] then compare the neglected issues to those actually raised; if the ignored issues are "clearly stronger" than those raised, appellate counsel was deficient. . . . To meet the prejudice prong [the petitioner] must show "a reasonable probability" that the omitted [] claim "would have altered the outcome" of his direct appeal had it been raised.

(Internal citations omitted.)

### a.    Argument 4

In Argument 4, Petitioner claims ineffective assistance based on direct appeal counsel's failure to include any "sentencing issues" in his PLA. As previously discussed, Petitioner had no constitutional right to an attorney—and thus, no right to an effective attorney—during the

preparation of his direct appeal PLA. Thus, there was a reasonable basis for the state trial court's rejection of this argument.

### b.      Argument 3

In Argument 3, Petitioner claims ineffective assistance based on direct appeal counsel's failure to raise an Eighth Amendment challenge to his sentence. As relevant here, the Eighth Amendment only prohibits punishments that are "grossly disproportionate to the severity of the crime." *United States v. Olson*, 450 F.3d 655, 686 (7th Cir. 2006). In noncapital cases, only a "narrow" proportionality principle applies. *United States v. Gross*, 437 F.3d 691, 693 (7th Cir. 2006). Petitioner's 90-year sentence was imposed for his rape and attempted murder of a 13-year-old girl; the attempted murder involved multiple stab wounds and strangulation. Thus, there was a reasonable basis for the state trial court to find that an Eighth Amendment challenge was not a "significant and obvious" issue that counsel was deficient for overlooking.

### c.      Argument 1

In Argument 1, Petitioner claims that direct appeal counsel was ineffective for failing to raise the issues contained in his state post-conviction petition. Respondent argues there was a reasonable basis for the state trial court to reject this argument because all of the issues were either lacking factual support or plainly meritless. As such, they were not "significant and obvious" issues that counsel was deficient for overlooking.

### i.      Issues Lacking Factual Support

In his post-conviction petition, Petitioner argued that trial counsel was ineffective. [18-17 at 3-5.] But Petitioner conceded that the appellate record contained no evidence to support

his allegations.[19]  [18-17 at 5.]  It was arguably not unreasonable for direct appeal counsel to forgo raising a claim based on evidence not in the record.  See *People v. Phillips*, 890 N.E.2d 1058, 1079 (Ill. App. Ct. 2008) ("As a general rule, where a defendant's ineffective assistance of counsel claim requires consideration of matters not included in the record on appeal, a postconviction relief proceeding is better suited to resolve that claim[.]").

Also in his post-conviction petition, Petitioner presented a *Napue* claim based on the State's closing argument about his jacket.  [18-17 at 3.]  But as previously discussed, there was no evidence in the record that Petitioner's jacket had *not* been destroyed.  Once again, it was arguably not unreasonable for direct appeal counsel to forgo raising a claim based on evidence not in the record.

### ii. Plainly Meritless Issues

In his post-conviction petition, Petitioner argued that (1) the State violated *Brady* by failing to disclose photographs of Petitioner's car and some police reports; (2) his due process rights were violated because the State did not request DNA tests before trial; and (3) his right to present a defense was violated when he was denied the opportunity to present DNA evidence, to testify in his own defense, to call Brian Gimino as a witness, and to present evidence that he did not destroy his jacket.  [18-17 at 2-3, 6.]  As previously discussed in connection with Claims E and Q, K, and N, none of these arguments has merit.  Thus, it was arguably not unreasonable for direct appeal counsel to forgo raising them.

_____

[19] Two exceptions to this statement are Petitioner's arguments that trial counsel was ineffective in failing to make the jacket part of the post-trial record and in arguing at closing that Frances could have stabbed herself.  [18-17 at 4-5.]  As previously discussed, however, in the face of the other evidence against Petitioner, there was arguably no "reasonable probability" that these omitted claims "would have altered the outcome" of Petitioner's direct appeal.

#### d.    Argument 2

In Argument 2, Petitioner claims that direct appeal counsel was ineffective for failing to raise the issues contained in his *pro se* supplemental petition and his state habeas pleadings. Again, Respondent argues that all of the issues were either lacking factual support or plainly meritless. As such, they were not "significant and obvious" issues that counsel was deficient for overlooking.

##### i.    Issues Lacking Factual Support

In his supplemental post-conviction petition, Petitioner argued that (1) he was actually innocent, (2) trial counsel erred in failing to present character witnesses at sentencing, and (3) his *Miranda* rights were violated. [18-26 at 1-2.] These issues were all dependent on matters outside the record, so direct appeal counsel was not ineffective for failing to present them. Moreover, because Petitioner was free to raise these claims on post-conviction review, see *People v. Erickson*, 641 N.E.2d 455, 458 (Ill. 1994), counsel's failure to raise them did not prejudice Petitioner procedurally. The same reasoning applies to Petitioner's claim in his state habeas complaint that newly discovered evidences should have been raised on direct appeal. [18-23 at 7-9.]

##### ii.    Plainly Meritless Claims

In his state habeas complaint, Petitioner argued that the trial court "lost jurisdiction" when the law student participating in Petitioner's defense failed to identify herself to the court. [18-23 at 3.] This claim is obviously meritless because "subject matter jurisdiction is conferred entirely by [the] state constitution." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 184 (Ill. 2002). Petitioner also argued that he was denied effective counsel when a law student participated in his defense, and that his constitutional rights were violated

46

when the State failed to obtain DNA testing prior to trial. [18-28 at 5, 7.] As previously discussed in connection with Claims N and X, neither of these arguments has merit. Thus, direct appeal counsel was not deficient in electing to raise other issues.

### T. Claim BB: Petitioner's Constitutional Rights Were Violated Due to the "Cumulative Errors" Included in His Petition.

In Claim BB, Plaintiff argues that his Sixth and Fourteenth Amendment rights were violated "due to the cumulative errors of all issues included in this petition." [1 at 6S-6T.] Respondent argues that the claim is procedurally defaulted and lacks merit. [43 at 176-80.]

Respondent first argues that the claim is defaulted because Petitioner did not raise a cumulative error argument in the state trial court on post-conviction review. The Court agrees. Although he raised many of the claims that now form the basis for his cumulative error claim, Petitioner failed to argue cumulative error itself, which is necessary for fair presentment. *See*, *e.g., Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008); *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006).

In the alternative, Respondent argues that the claim lacks merit. The Court agrees. To be entitled to relief on this ground, Petitioner must show: "(1) at least two errors were committed in the course of the trial; and (2) considered together, along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000). As discussed throughout this opinion, Petitioner has not met his burden of showing that any trial errors occurred. Even assuming otherwise, the evidence against Petitioner was so compelling that the Court is not "firmly convinced that but for the errors, the outcome of the trial probably would have been different." *Id.* at 825.

## U.    Claim CC: The Evidence Was Insufficient to Support a Conviction.

In Claim CC, Petitioner argues that there was insufficient evidence adduced at trial to support his conviction. [1 at 6T.] Respondent answers that this claim is procedurally defaulted and lacks merit. [43 at 180-81.]

Respondent first argues that the claim is defaulted. The Court agrees. Petitioner failed to raise the claim on direct appeal or in post-conviction proceedings. Moreover, Petitioner has never argued that his failure to raise the claim may be excused by ineffective assistance of counsel. See *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (finding that ineffective assistance claim may not excuse procedural default unless the ineffective assistance claim itself is not defaulted).

In the alternative, Respondent argues that Petitioner's claim lacks merit under § 2243's standard of review. The Court agrees. To prevail on his claim, Petitioner must show that, "after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Roberts*, 534 F.3d 560, 569 (7th Cir. 2008) (internal quotation marks omitted). Petitioner asserts that he may prevail on his claim because the only evidence against him was Frances's testimony, which was impeached. But "testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar." *Hayes*, 403 F.3d at 938. Furthermore, as previously discussed, although Frances's testimony was primary, other evidence—for example, the trauma surgeon's testimony that Frances's stab wounds were consistent with the size of Petitioner's knife blade, and the forensic scientist's testimony that fibers found on Petitioner's clothes were consistent with those taken from Frances's shirt—corroborated her identification.

48

## V.      Claims DD and II: The Trial Court Violated *Apprendi* at Sentencing.

In Claims DD and II, Petitioner argues that the trial court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), when it imposed extended-term sentences and ordered that they be served consecutively without submitting the issue to a jury.  [1 at 6U, 6W.]  Respondent argues that the claims lack merit.  Respondent also argues that, during post-conviction proceedings, the state trial court adjudicated these claims on the merits, so the adjudication is entitled to deference under 28 U.S.C. § 2254(d).  [62.]

The Court agrees that the claims were adjudicated on the merits during post-conviction proceedings.  Petitioner raised Claims DD and II in the trial court, [18-28 at 8], and that court summarily denied those arguments on the merits, [18-30 at 8].  Accordingly, Petitioner can satisfy the unreasonable-application prong of § 2254(d) only by showing no reasonable basis for the state trial court's decision.  *Pinholster*, 131 S. Ct. at 1402.  Petitioner has not made this showing.  *Apprendi* was decided after Petitioner's conviction became final and does not apply retroactively.  See *Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002).  And even if it did, the trial court's imposition of consecutive sentences did not violate its rule.  See *Oregon v. Ice*, 129 S. Ct. 711, 714-15 (2009).  Thus, there was a reasonable basis for the state trial court's decision.

## W.      Claim EE: Direct Appeal Counsel Was Ineffective for Failing to Argue in Favor of the Rule Later Announced in *Apprendi*.

In Claim EE, Petitioner argues that direct appeal counsel was ineffective for failing to argue that his sentence violated the rule later announced in *Apprendi*.  [1 at 6U.]  Respondent argues that this claim is procedurally defaulted and meritless.  [43 at 183.]  The Court agrees. The claim is defaulted because Petitioner did not raise it in state court.  In the alternative, the claim is meritless because "a claim that counsel was ineffective for failing to anticipate *Apprendi*

is untenable because the Sixth Amendment does not require counsel to forecast changes or advances in the law." *United States v. Santos*, 342 F. Supp. 2d 781, 793 (7th Cir. 2004) (internal quotation marks omitted).

## X.     Claim FF: The Trial Court Abused its Discretion at Sentencing.

In Claim FF, Petitioner argues that his Sixth and Fourteenth Amendment rights were violated when the trial court abused its discretion in imposing a sentence "based on findings unsupported by the record." [1 at 6V.] Respondent argues that the claim, in which Petitioner appears to be arguing that extended-term sentences were inappropriate, is noncognizable and meritless. [43 at 183-85.]

Respondent first argues that the claim is noncognizable. The Court agrees. Petitioner's contention that the trial court abused its discretion in imposing a sentence alleges only an error of state law. As previously discussed, an error of state law is not cognizable on federal habeas review. In the alternative, Respondent argues that the claim lacks merit. The Court agrees. First, consecutive sentences were mandated by state law. [18-11 at 8 (citing 730 ILCS 5/5-8-4(a) (West 1992)).] Second, the record supported that Petitioner's victim was a minor and that the nature of the crime was abhorrent; these findings provided ample justification for the trial judge's imposition of extended-term sentences. [18-11 at 8 (citing 730 ILCS 5/5-5-3.2(c) (West 1992) and *People v. La Pointe*, 431 N.E.2d 344 (Ill. 1981)).]

## Y.     Claim GG: The Trial Court Erred in Admitting Testimony Regarding Frances's Reaction to a Photo Array.

In Claim GG, Petitioner argues that he was denied a fair trial when the trial court allowed ASA McCarter to testify that Frances "began shaking and crying" when she identified Petitioner in a photo array; the testimony was allegedly prejudicial and irrelevant. [1 at 6V-6W.] Respondent asserts that the claim is noncognizable, defaulted, and meritless. [43 at 185-88.]

Respondent first contends that the claim is noncognizable. The Court agrees. Petitioner's contention that the trial court abused its discretion in admitting testimony alleges only an error of state evidence law. As previously discussed, an error of state law is not cognizable on federal habeas review. Respondent also maintains that the claim is defaulted. The Court agrees. Petitioner failed to present it in his direct appeal PLA. And, as previously discussed, Petitioner had no right to an attorney during the preparation of that pleading, so he cannot show cause to excuse his default.

In the alternative, Respondent argues that the claim lacks merit. The Court agrees. As previously discussed, the McCarter's description was relevant to establishing the reliability of Frances's prior identification of Petitioner. Moreover, also as previously discussed, "[t]o be of constitutional import, an erroneous evidentiary ruling . . . must have produced a significant likelihood that an innocent person has been convicted." *Howard*, 185 F.3d at 723-24. Here, the defense theory was that Frances was lying about who attacked her, whereas McCarter's testimony only spoke to Frances's prior identification of Petitioner. And again, substantial evidence apart from McCarter's testimony supported the jury's verdict.

**Z.  Claim HH: The Trial Court Erred in Admitting Williams's Prior Statement.**

In Claim HH, Petitioner alleges he was denied a fair trial when the trial court allowed Rich Williams to testify that, on August 19, he told a co-worker that Petitioner left J.J. Peppers in a hurry. [1 at 6W.] Respondent asserts arguments similar to those raised against Claim GG. [43 at 188-90.]

Respondent first contends that the claim is noncognizable. The Court agrees. Petitioner's contention that the trial court erroneously admitted testimony alleges only an error of state evidence law, which is not cognizable on federal habeas review. See *United States ex rel.*

*Gonzalez v. DeTella*, 918 F. Supp. 1214, 1222 (N.D. Ill. 1996) (citing cases finding that admission of a prior consistent statement, when the declarant is available for cross-examination at trial, is noncognizable). Respondent also maintains that the claim is defaulted. The Court agrees. Petitioner failed to present it in his direct appeal PLA. Furthermore, in determining that Petitioner had waived the claim by not asserting it in his post-trial motion, the state Appellate Court applied an adequate and independent ground of decision. [18-11 at 7.]

In the alternative, Respondent argues that the claim lacks merit. The Court agrees. Even assuming the testimony constituted a prior consistent statement, as previously explained, it would have been admissible under Illinois hearsay law because Williams was available for cross-examination at trial. And again, substantial evidence apart from William's testimony supported the jury's verdict.

**AA.    Claim JJ: The State "Failed to Exercise [its] Charge and Office."**

In Claim JJ, Petitioner argues that the State had reason to believe that Petitioner was innocent and therefore had a duty to further investigate the case before seeking conviction. [1 at 6W-6X.] Respondent contends that the claim is meritless. [43 at 190-91.] The Court agrees. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute . . . generally rests entirely in his discretion." *United States v. Moore*, 543 F.3d 891, 899 (7th Cir. 2008) (internal quotation marks omitted). Furthermore, as previously discussed, the State introduced ample evidence at trial supporting Petitioner's guilt.

### BB.    Claim KK: Court Appointed Attorneys Withheld Evidence of Petitioner's Innocence.

In Claim KK, Petitioner argues that his trial counsel and post-conviction counsel mishandled evidence. Respondent argues that the claim lacks merit.[20]  [43 at 191.]  The Court agrees.  Petitioner's allegations of ineffective assistance of trial counsel were previously discussed in connection with Claims W and Y.  And Petitioner's arguments regarding post-conviction counsel are foreclosed by 28 U.S.C. § 2254(i).

### CC.    Claim LL:  Petitioner Is Actually Innocent.

In Claim LL, Petitioner argues that he is actually innocent.  [1 at 6Y.]  Respondent argues that this claim is noncognizable.  [43 at 192.]  The Court agrees.  "[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993).

## IV.    Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing § 2253(c)).  Under this standard, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have

---

[20] Respondent also argues that the claim is fails under Rule 2(c) of the Rules Governing Habeas Corpus Cases.  Because the claim fails on other grounds, the Court need not reach this issue.

been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotations omitted). And in cases where a district court denies a habeas claim on procedural grounds, the habeas court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 485 (2000).

The Court concludes that Petitioner has not made the requisite showing. As set forth in detail above, multiple grounds for dismissal are present for nearly all of Petitioner's claims. The issue that Petitioner emphasizes most is the failure of trial counsel to call Brian Gimino as a witness. But as discussed in connection with Claims W and Y, the state appellate court thoroughly addressed this claim. As a result, Petitioner bears a heavy burden under AEDPA, as well as under *Strickland*, and has not made a substantial showing of the denial of a constitutional right. Thus, the Court declines to certify any issues for appeal pursuant to § 2253(c)(2).

## V. Conclusion

For all of the foregoing reasons, the petition for writ of habeas corpus [1] is respectfully denied. The Court also declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

Dated: May 29, 2012

_____
Robert M. Dow, Jr.
United States District Judge